[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

**FILED**
**U.S. COURT OF APPEALS**
**ELEVENTH CIRCUIT**
**August 31, 2005**
**THOMAS  K. KAHN**
**CLERK**

No. 04-15598
Non-Argument Calendar

_____

Agency No. A95-885-991

JOEL UMBA MUANDA,

Petitioner-Appellant,

versus

U.S. ATTORNEY GENERAL,

Respondent-Appellee.

_____

Petition for Review of a Decision
of the Board of Immigration Appeals

_____

**(August 31, 2005)**

Before ANDERSON, DUBINA and BARKETT, Circuit Judges.

PER CURIAM:

Joel Umba Muanda, a native and citizen of the Democratic Republic of

Congo (the "DCR"), petitions through counsel for review of the Immigration

Judge's ("IJ's") order directing that he be removed to the DCR and denying his claims for asylum and withholding of removal under the Immigration and Naturalization Act ("INA") and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman and Degrading Treatment or Punishment ("CAT"), which order became the final agency determination when the Board of Immigration Appeals ("BIA") summarily affirmed the IJ's decision without an opinion.  Mendoza v. United States Att'y Gen., 327 F.3d 1283, 1284 n.1 (11th Cir. 2003).  Because the petitioner's removal proceedings commenced after April 1, 1997, the effective date of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, 110 Stat. 3009 (1996) ("IIRIRA"), this case is governed by the permanent provisions of the INA, as amended by IIRIRA.  Gonzalez-Oropeza v. United States Att'y Gen., 321 F.3d 1331, 1332 (11th Cir. 2003).

On appeal, Muanda argues that (1) the IJ erred in making an adverse credibility determination based on an incomplete record, and (2) the IJ did not properly weigh the factors relating to Muanda's credibility.  With respect to his incomplete record argument, Muanda (1) contends that at least 40 pages of exhibits were identified as being missing from the IJ's materials at the beginning of the hearing, (2) concedes that the materials were photocopied during the

2

proceedings, and (3) avers that consideration of these materials would have bolstered Muanda's credibility. With respect to his argument that the IJ improperly weighed the factors relating to Muanda's credibility, Muanda contends that certain examples of inconsistency and irrationality cited by the IJ could be properly discounted or otherwise explained.

The IJ's factual determinations are reviewed under the substantial evidence test, and we "must affirm the [IJ's] decision if it is 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" Id. at 1283-84 (citation omitted). "Credibility determinations likewise are reviewed under the substantial evidence test." D-Muhumed v. United States Att'y Gen., 388 F.3d 814, 818 (11th Cir. 2004). "Once an adverse credibility finding is made, the burden is on the applicant alien to show that the IJ's credibility decision was not supported by 'specific, cogent reasons' or was not based on substantial evidence." Forgue v. United States Att'y Gen., 401 F.3d 1282, 1287 (11th Cir. 2005). "A credibility determination, like any fact finding, may not be overturned unless the record compels it." Id. (internal quotations and citations omitted).

"Considering the totality of the circumstance, and all relevant factors, a trier of fact may base a credibility determination on the demeanor, candor, or responsiveness of the applicant . . ., the inherent plausibility of the applicant's . . .

3

account, the consistency between of the applicant's . . . written and oral statements

. . ., the internal consistency of each such statement, the consistency of such

statements with other evidence of record (including the reports of the Department

of State on country conditions), and any inaccuracies or falsehoods in such

statements, without regard to whether an inconsistency, inaccuracy, or falsehood

goes to the heart of the applicant's claim, or any other relevant factor." 8 U.S.C. §

1158(b)(1)(B)(iii).[1]

An alien who arrives in or is present in the United States may apply for

asylum. See INA § 208(a)(1), 8 U.S.C. § 1158(a)(1). The Attorney General has

discretion to grant asylum if the alien meets the INA's definition of a "refugee."

See INA § 208(b)(1), 8 U.S.C. § 1158(b)(1). A "refugee" is

> any person who is outside any country of such person's nationality . .
> ., and who is unable  or unwilling to return to, and is unable or
> unwilling to avail himself or herself of the protection of, that country
> because of persecution or a well-founded fear of persecution on
> account of race, religion, nationality, membership in a particular
> social group, or political opinion . . .

8 U.S.C. § 1101(a)(42)(A). The asylum applicant carries the burden of proving

statutory "refugee" status. See Al Najjar v. Ashcroft, 257 F.3d 1262, 1284. To

establish asylum eligibility, the alien must, with specific and credible evidence,

---

[1] This section was added to Section 1158(b) on May 11, 2005 pursuant to the Real ID Act.
Real ID Act, Pub. L. No. 109-13, 119 Stat. 231, 302 (codified at 8 U.S.C.§ 1158(b)(1)(B)(iii)).

establish (1) past persecution on account of a statutorily listed factor, or (2) a "well-founded fear" that the statutorily listed factor will cause such future persecution. 8 C.F.R. § 208.13(a), (b); Al Najjar, 257 F.3d at 1287.

An alien seeking withholding of removal under the INA must show that his life or freedom would "more likely than not" be threatened upon return to his country because of, among other things, his political opinion. Mendoza, 327 F.3d at 1287. This standard is more stringent than the "well-founded fear" standard for asylum; thus, if an applicant is unable to meet the "well founded fear" standard for asylum, he generally is unable to qualify for withholding of removal. See, e.g., Al Najjar, 257 F.3d at 1292-93.

Upon review of the record, and having considered the briefs of the parties, we discern no reversible error.

First, the record shows that the IJ considered the exhibits that were missing at the beginning of the asylum hearing. Approximately 89 pages of exhibits submitted by Muanda were missing from the IJ's record. This material was copied for the IJ during the course of the hearing. Included in this missing material were Muanda's employment card and work verification letters. The IJ, in his decision, cited to these work verification letters, specifically identifying the pages where they could be found, indicating that he reviewed the missing material.

Second, the IJ properly gave specific, cogent reasons for his credibility determination. See Forgue, 401 F.3d at 1287. In making his adverse credibility finding, the IJ took into account Muanda's demeanor while testifying and the rationality, consistency, and believability of his testimony. See 8 U.S.C. § 1158(b)(1)(B)(iii). Moreover, the IJ also explained in detail his reasons for finding Muanda's testimony irrational, inconsistent, and unbelievable, and substantial evidence supports the IJ's conclusion that Muanda was not credible when he claimed that he had suffered past persecution in the DCR. See D-Muhumed, 388 F.3d at 818.

Muanda testified that (1) in 1996, he attended a meeting with the minister of education and the national head of the National Teachers' Union (the "Union") and, (2) in 2001, Albert Amuri personally rescued Muanda from prison, in full view of other military personnel, and helped him escape to the United States. However, the IJ found this testimony implausible because (1) Muanda was one of at least 24 regional leaders of the Union and none of the other regional leaders were in attendance at the meeting, and (2) Amuri was the head of the government's security services and the uncle of the President of the DCR, who, if the testimony is to be believed, risked personal injury and position and status within the government and did so in full view of other military personnel.

6

The record also contains examples of inconsistency between Muanda's testimony at the hearing and his testimony at his asylum interview or his written affidavit. These examples include (1) his testimony at the hearing that four individuals, Amuri, himself, and two bodyguards, went to the United States Embassy to get his visa versus his written affidavit, which stated that he went with Amuri, the field officer, and others from Gideons International to the embassy to get his visa; (2) his testimony at the hearing that soldiers broke down the door to arrest him after the May 2001 strike versus his testimony to the asylum officer that there was no forced entry during this arrest; and (3) his testimony at the hearing that Amuri personally rescued him versus his affidavit stating that "a soldier" rescued him.

Last, because Muanda produced corroborating evidence, we must determine whether substantial evidence supports the IJ's finding that Muanda failed to establish past persecution or a well-founded fear of future persecution. See Forgue, 401 F.3d at 1287-88 (holding that, where an applicant produces no evidence other than his testimony, an adverse credibility determination is alone sufficient to support the denial of an asylum application and noting that, where an applicant produces other evidence of persecution, the IJ must consider that evidence, and it is not sufficient for the IJ to rely solely on the adverse credibility

7

determination).  The record reflects that the IJ considered the corroborating evidence and rejected it as implausible or inconsistent and, thus, not credible.  For example, the IJ found that (1) the work verification letters, submitted as exhibits and stating that Muanda was continuously employed from 1982 to 1991, contradicted Muanda's testimony that he had been absent  from November 30, 1996 through July 1997 and from May 2001 to the end of that school year, and (2) it did not seem "rationale or believable" that Amuri would allow his wife and son to provide documentary evidence of his activities against the DCR, that is, letters in support of Muanda that were also submitted as exhibits.  Moreover, the IJ noted his concern that the State Department's country reports for 1996 and 2001 make no mention of the strikes called by his union (which Muanda alleges were of national concern and were criticized by the country's president over national radio), and the arrests of its leaders, even though these documents do report the national strikes of other unions and the arrests of their leaders.

Because (1) the IJ's finding that Muanda's testimony was not credible is supported by substantial evidence, and (2) the IJ properly considered the corroborating evidence, substantial evidence supports the IJ's finding that Muanda failed to establish  past persecution or a well-founded fear of future persecution and, thus, the IJ's denial of Muanda's asylum application.  See Forgue, 401 F.3d at

1287.  Because Muanda has failed to establish a claim of asylum on the merits, he necessarily fails to establish eligibility for withholding of removal or protection under the CAT.  See id. at 1288 n.4.  Accordingly, we deny the petition for review.

**PETITION DENIED.**